## ISAACS AND BAGLEY *VS* THE JUDGE OF THE COUNTY COURT OF JEFFERSON.

1. Judgment in a bastardy case, that "defendant pay *not exceeding* fifty dollars," &c, sustained by no evidence of a bond having been executed, except the mere testimony, of the clerk, that none could be found in the office, but that defendant's surety said they had executed one—held not to authorise an execution.
2. The power of Courts to quash irregular executions is not limited to periods prior to their return; but such executions may be quashed after their return, especially if they still have virtue.

Error to the County Court of Jefferson County.

This case arose on a motion submitted to the Court below, for the quashing of an execution: and it was said, in support thereof, in that Court, that the same should be quashed—

*First*—Because there was no judgment to support the same.

*Secondly*—Because there was no order, warrant, decree or bond, having the force or effect of a judgment; or any other proceeding remaining of record in that Court, of authority to sustain an execution.

*Thirdly*—Because of no proceeding of record in that Court, showing that the defendants in execution were, at any time, parties to a judgment, order, or decree, authorising an execution.

Then the plaintiff in execution, to sustain the same, produced an execution in the following words, to wit—

·"*The State of Alabama.*

"To the sheriff of Jefferson County—Greeting.

" We command you, that of the goods and chattels, lands and tenements of Elijah Isaacs, and Isaiah Bagley, late of your County, you cause to be made the sum of fifty dollars, which has accrued to, and is due to Peter Walker, Judge of the County Court of Jefferson County—whereof the said Elijah Isaacs and Isaiah Bagley, are convicted, as appears to us, by a bond remaining in the office of the clerk of said Court, bearing date the seventh day of January, one thousand eight hundred and twenty-three; and also, the sum of one dollar and twelve and a half cents, costs—and have the said sum of fifty dollars and costs, before the judge of said Court, at a County Court, to be held for said County, on the fourth Monday in August, instant, to render to said judge and his successors in office; and have you then and there this writ. Witness, H. W. Goyne, clerk of said Court, at office, this fourth day of August, one thousand eight hundred and thirty-one.

" H. W. Goyne, Clerk."

"Issued, 4th August, 1831."

[Endorsed.] " Peter Walker, Judge of the County Court, use, &c. *vs* Elijah Isaacs and Isaiah Bagley.—Curtailment, fifty dollars; costs, one dollar twelve and a half cents. Received, 4th August, 1831. Will. A. Scott, sheriff. Levied, 8th Aug. 1831, on one sorrel mare and colt, as the property of Isaiah Bagley, to be sold on Saturday, the 20th August, instant.—Gave bond, with William Bagley security, for delivery of the same.—Bond forfeited, and here-

with returned, 22d August, 1831. Will. A. Scott, sheriff, by his deputy, J. B. Nabours."

The record on which this execution had issued, was as follows :

" Record. State vs Elijah Isaacs. Sally Early, Pro. This day came the parties, by their attornies, and thereupon came a jury, to wit, [naming them,] who, being empannelled, tried and sworn, well and truly to try the issue—the State of Alabama against said Isaacs, for bastardy—returned the following verdict : We, the jurors, do find, that the defendant is the father of the child alleged to him, by the said Sally Early. It is, therefore, considered by the Court, that the defendant pay *not exceeding* the sum of fifty dollars, yearly, for the term of ten years, towards the support, and maintenance and education of the said child ; and that the said Elijah Isaacs give bond and security for the due and faithful payment of said sum of money, to this Court; and that he be in custody of the sheriff, until he comply with the judgment of said Court."

Harrison W. Goyne, the clerk of the said County Court, at the time the said execution issued, was then examined, as a witness in the cause; and he testified, that he had searched several times in his office, diligently, and that the above record was all that could be found in his office : that no bond could be found; but that Bagley told witness, that he, Bagley, had entered into a bond, as the security of said Isaacs, for the support and maintenance of said bastard child.

Hugh Morrow, a deputy of a former clerk, was also examined in the case; and he testified, that he,

together with the principal clerk, had examined the office, in one thousand eight hundred and twenty-seven, but found no record or bond in said cause, except the entry above shewn.

The County Court overruled the motion to quash, and for so refusing to sustain the motion, and for permitting parol testimony to be produced, as to the execution of the bond, the said plaintiffs filed their exceptions.

The plaintiff, for assignments of error in this Court, alleged—

1. That the Court below erred, in refusing to quash the execution.

2. That the Court below erred, in admitting parol testimony of the existence of the bond.

And it was contended, by *Peck*, for the plaintiff in error—

*First*—That the execution had nothing to sustain it. Because, if the evidence of the record was to be taken as a judgment, it was too uncertain. No definite sum was fixed, and it might have varied from one dollar to fifty dollars. The judge could not have exceeded the fifty dollars, but it was his duty to establish a definite amount.

*Secondly*—That there was no evidence of a bond having been executed: and; at best, parol evidence of its loss, was not admissible, till evidence was first produced, of its original execution.

SAFFOLD, J.—In the Court below, the plaintiffs in error moved, on notice previously given, to quash an execution, purporting to have issued against

them on a bond, taken in a case of bastardy, prosecuted under the statute.

Several grounds were relied on in support of the motion to quash; the effect of all which was, that there was no record or proceedings in the office from which the execution issued, sufficient to authorise it.

On the hearing, the motion was overruled, at the cost of the defendants in execution. A bill of exceptions then taken, shows the record and other evidence, on which the decision was made; the material parts of which are, in substance, as follow :

The plaintiffs in execution produced an execution from the clerk of the County Court, dated the 4th of August, eighteen hundred and thirty-one, which had issued against defendants for 50 dollars, in favor of the Judge of said Court, of which sum it was stated they were convicted, as appeared by a bond remaining in the office of the clerk of said Court, bearing date in January, eighteen hundred and twenty-three. On this *fi. fa.* a levy on personal property appears to have been made, a delivery bond taken, and the same returned, by the sheriff, *forfeited* on the twenty-second of August, eighteen hundred and thirty-one, which was also the date of the notice of this motion.

The plaintiffs in execution then produced a record of the same Court of January term, eighteen hundred and twenty-three, which shewed the trial by jury of an issue of bastardy, between the State and Elijah Isaacs, prosecuted by Sally Early, and a verdict convicting Isaacs of being the father of the child, as alleged by the prosecution.

On this conviction, it appears the Court gave judgment that the defendant should "pay not exceeding

the sum of fifty dollars, yearly, for the term of ten years," for the benefit of the child, and should give bond and security for the payment to the Judge of that Court, and remain in custody until he complied.

Then the parol evidence of the clerk and deputy clerk of the same Court was introduced, stating, that on repeated diligent examinations of the office, before, and at the time of the issuance of the execution, *no bond*, or other record, than as above stated, was to be found; but that Bagley had told the clerk that he had entered into a bond as the security of Isaacs, for the support and maintenance of the child. Bagley objected to the competency of parol evidence to establish the execution of the bond.

This was all the evidence before the Court, when the motion to quash was overruled.

The refusal of the Court, to set aside the execution, is assigned for error.

From the state of the record, as shewn, the issuance of the execution was confessedly illegal, and the process irregular. Had the earlier proceedings in the cause been regular, the execution could have issued only on the bond, which the imputed father and his security were required to give, pursuant to the judgment of the Court. But here was no evidence of any grade, shewing the tenor and effect of any such bond; nor was there any *competent* evidence of the existence, at any time, of any bond, intended for this purpose.

It is true, that Bagley is shewn to have *said* to one of the clerks, that he had entered into such bond, as the security of Isaacs; but this evidence, on account of its grade, and uncertainty in the description of

the instrument, as well as the objection, that it was an admission of *one* only of the obligors, was clearly inadmissible, in a proceeding of this nature. A farther difficulty in the establishment of the bond, was, that the statute required one which was to have the force and effect of the judgment, under which it was to have been given; and the judgment itself, was defective, in not ascertaining the sum in which the accused was condemned.

Instead of condemning him to the payment of some certain annual sum, which did not exceed fifty dollars, the judgment was for an indefinite amount; consequently, it was, at least, extremely doubtful, if any valid bond could have been given, under the judgment. But, it is unnecessary to press this inquiry, as there was no sufficient shewing, that, in fact, any bond was given; and consequently there could have been no legal foundation, for the execution.

But, it is contended, that the execution having been *returned*, the Court then had no power over it, sufficient to quash, or set it aside. There seems to be no difference, as respects the power of the Court to quash executions, whether returned or not—especially if they still have virtue, as the foundation for further proceedings—as in this case. Here, the future proceedings on the forfeited bond, must have reference to the execution, under which it was taken; so that the reason and necessity of the action of the Court, upon it, were no less than before its return; and no less than if it had been returned with the money made upon it, and the motion to quash had been with a view to have the money restored to the defendant.

ISAACS and BAGLEY *vs* JUDGE OF JEFFERSON CO. COURT.

In the case of *Brand* vs *Mears*,[a] a *testatum fieri* [3 Term.R. 388.] *facias*, was set aside after it had been executed, for the irregularity, that no original *fi. fa.* had previously issued, to warrant it.

In 2d Dunlap's Practice, (p. 773,) it is said, that "If a writ of execution be irregular, the defendant may move the Court to set it aside, and discharge him out of custody, if taken on a *ca. sa.* : or, that the goods or money levied on a *fi. fa.*, may be restored to him."

The same principle was recognised by this Court, in the case of *Creighton* vs *Denby*,[b] and, in this lat- [b Ala Rep. 250.] ter case, the judgment of the Circuit Court, refusing the motion, was reversed, and the execution here quashed.

In the case before us, the substratum being insufficient, the superstructure must fall. The judgment below must be reversed, and the execution be quashed by the judgment of this Court.